**Slip Op. 20-90**

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

**Court No. 20-00012**

BORUSAN MANNESMANN PIPE U.S. INC.,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*.

Before: M. Miller Baker, Judge

**OPINION AND ORDER**

[Defendant's motion for remand to the Department of Commerce is granted.]

Dated: June 25, 2020

*Joseph H. Hunt*, Assistant Attorney General; *Jeanne E. Davidson*, Director; *Tara K. Hogan*, Assistant Director; and *Stephen C. Tosini*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, on the brief for Defendant.

*Julie C. Mendoza, Donald B. Cameron, R. Will Planert, Brady W. Mills, Mary S. Hodgins, Eugene Degnan, Edward J. Thomas III*, and *Jordan L. Fleischer*, Morris, Manning and Martin, LLP, of Washington, DC, on the brief for Plaintiff.

*Baker*, Judge: In this case, a domestic importer of steel pipe products unsuccessfully asked the Department of Commerce for exclusions (exemptions) from the national security tariffs the President imposed on such products. The importer then brought this Administrative Procedure Act suit challenging Commerce's denials of its exclusion requests. Demonstrating that sometimes "the better part of valour is discretion," W. Shakespeare, *Henry IV Part One* 113 (M. Mack ed., Signet Classics 1998) (1598), the government now moves to remand this matter back to Commerce so that the agency can remedy deficiencies in the administrative record and otherwise rethink its denials of the importer's exclusion requests. For the reasons explained below, the Court grants the motion.

## I. Statutory and Regulatory Background

As its heading indicates, Section 232 of the Trade Expansion Act of 1962 authorizes the President to take certain actions to reduce imports of goods to "[s]afeguard[ ] national security." 19 U.S.C. § 1862. Pursuant to this authority, the President imposed a 25 percent ad valorem tariff on imports of certain steel products. *Proclamation 9705 of March 8, 2018, Adjusting Imports of Steel into the United States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018).

In addition to imposing tariffs, Proclamation 9705 directs the Secretary of Commerce "to provide relief from the additional duties set forth in clause 2 of this proclamation for any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality"

Court No. 20-00012 Page 3

and further authorizes the Secretary "to provide such relief based upon specific national security considerations." *Id.* at 11,627 ¶ 3.[1]

Pursuant to Proclamation 9705, the Department of Commerce issued an interim final rule allowing domestic parties to request exclusions from the Section 232 steel tariffs[2] and allowing other domestic parties to object to exclusion requests. *See* 83 Fed. Reg. at 12,106. The interim final rule states that "an exclusion will only be granted if an article is not produced in the United States in a sufficient and reasonably available amount, is not produced in the United States in a satisfactory quality, or for a specific national security

---

[1] In related proclamations, the President thereafter made certain adjustments to this tariff, including a 50 percent rate applied to imports from Turkey during the period from August 13, 2018, to May 21, 2019. *See Proclamation 9772 of August 10, 2018, Adjusting Imports of Steel into the United States*, 83 Fed. Reg. 40,429 (Aug. 15, 2018); *Proclamation 9886 of May 16, 2019, Adjusting Imports of Steel into the United States*, 84 Fed. Reg. 23,421 (May 21, 2019).

[2] *See Requirements for Submissions Requesting Exclusions from the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel into the United States and Adjusting Imports of Aluminum into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum*, 83 Fed. Reg. 12,106, 12,106 (Dep't Commerce Mar. 19, 2018) ("The new supplements set forth the process for how parties in the United States may submit requests for exclusions from actions taken by the President . . . to protect national security from threats resulting from imports of specified articles.").

Court No. 20-00012 Page 4

consideration." *Id.* at 12,110 (cleaned up);[3] *see also Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026, 46,062–63 (Dep't Commerce Sept. 11, 2018).

## II. Factual and Procedural Background

According to its complaint, Plaintiff Borusan Mannesmann Pipe U.S., Inc., is a domestic producer of steel pipe and tube products. ECF 5, at 2–3 ¶ 5. Borusan produces a type of welded steel pipe and tube known as "oil country tubular goods." *Id.* Borusan also imports these products in unfinished form to complement its domestic production. *Id.* These imports are subject to Section 232 tariffs under Proclamations 9705, 9772, and 9886. *Id.* at 3 ¶ 6.

---

[3] Some readers may not recognize the parenthetical "cleaned up." It is an innovative legal writing device employed to cut through strings of parenthetical folderol that can plague legal citations:

> Using (cleaned up) indicates that in quoting a [source] the author has removed extraneous, non-substantive material like brackets, quotation marks, ellipses, footnote reference numbers, and internal citations; may have changed capitalization without using brackets to indicate that change; and affirmatively represents that the alterations were made solely to enhance readability and that the quotation otherwise faithfully reproduces the quoted text.

J. Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143, 154 (2017) (cleaned up).

Court No. 20-00012                                    Page 5

Borusan submitted 19 requests to exclude imported oil country tubular goods from the Section 232 tariffs, contending that such products were not produced in the United States in a sufficient and reasonably available amount or in a satisfactory quality. *Id.* at 3 ¶ 7. In response, certain of Borusan's domestic competitors objected on various grounds not relevant for purposes of the present motion. *Id.* at 3–4 ¶¶ 8–9. Commerce denied Borusan's exclusion requests on July 15, 2019. *Id.* at 4 ¶ 10.

Borusan then brought this suit alleging that Commerce's denial of its exclusion requests violated the APA, 5 U.S.C. §§ 701–06. *Id.* at 5 ¶ 12. Instead of filing a responsive pleading, the government now moves to "remand . . . to the agency to reconsider its final determinations not to exclude 19 products from the remedy imposed by the President under Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862." ECF 12, at 2.[4] Borusan opposes the motion. ECF 26.

## III.  Jurisdiction

Borusan's suit seeking relief under the APA falls within the Court's residual jurisdiction, which consists of exclusive jurisdiction of any civil action commenced against the United States for, *inter alia*, "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(2).

---

[4] Citations to the parties' filings refer to the pagination found in the ECF header at the top of each page.

Court No. 20-00012 Page 6

## IV. The Parties' Contentions

The government asks the Court to remand this case to Commerce "for further consideration, without confessing error." ECF 12, at 4. The government argues that where, "*as is the case here*, 'if the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id.* (cleaned up and emphasis added) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

The government further states that "Commerce intends to review and complete the administrative record, as necessary, including memorializing recommendations by the International Trade Administration," and "then issue new determinations to either: (1) exclude some or all of these products from the scope of the Section 232 measure on steel; or (2) deny the exclusion requests." *Id.* Taken together, the government's arguments indicate that Commerce has concerns over the adequacy of the record, and therefore has "doubts about the correctness of its decision" on the current record. *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001).

Although it acknowledges that "the case law generally favors granting Defendant's motion for a voluntary remand," Borusan contends that remand is inappropriate because this is an "exceptional case." ECF

Court No. 20-00012 Page 7

26, at 3. Specifically, Borusan asserts that the apparent gaps in the record raise questions about how Commerce arrived at its decisions denying Borusan's exclusion requests, *id.* at 3–4, and that these questions are magnified by "other information that raises the possibility that Plaintiff's exclusion requests may have been prejudged or subject to improper influence during the underlying proceeding at Commerce," *id.* at 5.

*First*, Borusan cites a report from Commerce's inspector general stating that in certain unspecified cases, agency

> officials took subsequent action consistent with [off-record] communications, giving the appearance that the Section 232 exclusion review process is not transparent and that decisions are not rendered based on evidence contained in the record. Additionally, the Bureau of Industry and Security . . . changed an internal criterion used to review exclusion requests before posting them online at the request of an objector, creating the perception of undue influence.

ECF 26-1, at 3.

*Second*, Borusan cites Commerce's statement that it would cost the agency $350,000 to respond to Freedom of Information Act requests concerning Section 232 exclusion applications. Borusan asserts that if Commerce must actually incur such expense to respond to FOIA requests, it "suggests that Commerce believes there may have been extensive correspondence or other *ex parte* communications between

Court No. 20-00012 Page 8

Commerce and outside parties" not included in the current record. ECF 26, at 6.

*Third*, Borusan cites two studies of Commerce's review of Section 232 exclusion requests by the Mercatus Center at George Mason University, ECF 26-1, at 29–41, one from 2019, covering the first year of exclusion requests, and the other from 2020, covering the second year of such requests.

The 2019 study notes that "just 2.7 percent of aluminum tariff exclusion requests with an objection have been approved." *Id.* at 30. The 2019 study further notes, however, that 47 percent of steel tariff exclusion requests were approved and 15 percent were denied, with the remainder pending at the time the article was written. *Id.* at 31. While the study states that "less than one percent of the steel exclusion requests with an objection [had] been approved," it also notes that "89 percent of the exclusion requests that have had an objection [were] still pending . . . ." *Id.* at 33 (cleaned up).

The 2020 study shows that 50 percent of steel tariff exclusion requests were approved, 14 percent were denied, and 36 percent remained pending, and notes that "the government has yet to approve a single steel or aluminum exclusion request for which an objection was filed . . . . At the same time, most of these requests haven't been rejected either but remain pending." *Id.* at 38 (cleaned up).

Borusan contends that the "apparent irregularities in the administrative record," when combined with the

IG report raising questions about *ex parte* communications and the Mercatus Center studies, mean that "an open-ended voluntary remand to Commerce is likely to be futile given Commerce's apparent prejudgment of exclusion requests that are subject to any objection by the domestic industry." ECF 26, at 7.

## V.     Discussion

The applicable legal standard dictates that where, as here, the government "request[s] a remand (without confessing error) in order to reconsider its previous position," this Court "has discretion over whether to remand." *SKF*, 254 F.3d at 1029. "A remand may be refused if the agency's request is frivolous or in bad faith. . . . Nevertheless, if the agency's concern is substantial and legitimate, a remand is usually appropriate." *Id.*

The government's request is *prima facie* "substantial and legitimate," as it identifies an inadequate record as the basis for the remand request. Indeed, Borusan's argument that the existing record does not support Commerce's exclusion denials merely confirms that the government's concerns about the "correctness of its decision[s]" on the current record are well-founded. *Id.*

Given that the remand request is hardly frivolous, the Court is required to grant it unless Borusan has demonstrated bad faith. Commerce, however, is entitled to the presumption of regularity, which "supports official acts of public officers. In the absence of clear evidence to the contrary, the doctrine presumes that public officers have properly discharged their official

duties." *Jazz Photo Corp. v. United States*, 439 F.3d 1344, 1351 (Fed. Cir. 2006) (cleaned up) (quoting *Bernklau v. Principi*, 291 F.3d 795, 801 (Fed. Cir. 2002)); *cf. Am-Pro Prot. Agency, Inc. v. United States*, 281 F.3d 1234, 1239–40 (Fed. Cir. 2002) (discussing presumption that government officials act in good faith and requiring clear and convincing evidence to show otherwise).

Borusan's evidence falls far short of clearly and convincingly establishing that Commerce previously prejudged its exclusion requests, much less that Commerce will do so on remand after correcting the deficiencies in the record and fully considering the exclusion requests anew.

First, the IG report simply indicates that in some unidentified cases, officials at Commerce engaged in communications that are not reflected in the record. Whether the incidents noted by the IG report involved Borusan's exclusion requests is wholly speculative. Moreover, even if they did, they do not establish that Commerce either prejudged Borusan's requests or will do so on remand.

Second, Commerce's estimated cost of responding to Borusan's FOIA requests merely confirms, as the government's motion admits, that the existing record is inadequate. It does not establish that Commerce prejudged Borusan's exclusion requests or will do so on remand.

Third, the Mercatus studies show at most that when a domestic steel producer objected to a steel

tariff exclusion request, Commerce delayed disposition of that request. The studies do not show how many opposed requests were ultimately granted or denied. Nor do they address the average length of delays, much less the reasons for the delays (aside from an objection being filed). The Mercatus studies simply do not support the conclusion that Commerce prejudged Borusan's exclusion requests before or will do so on remand.

In sum, on this thin evidentiary record, the Court must apply the presumption of regularity to which Commerce is entitled.

Finally, a remand at this early stage of the litigation will promote judicial economy. If the Court were to adjudicate the case on the existing deficient record, the result could well be a remand for reconsideration, which Borusan's complaint requests as an alternative form of relief. *See* ECF 5, at 17. Thus, remanding for reconsideration now essentially expedites relief that Borusan seeks and may obviate the necessity for remand (or, perhaps, any proceedings) later. At a minimum, a remand now for correcting the record and fully reconsidering all aspects of the challenged 19 exclusion denials may serve to better frame the issues for the Court to decide.

\* \* \*

For the foregoing reasons, therefore, it is hereby

**ORDERED** that Defendant's motion for voluntary remand (ECF 12) is **GRANTED**; and it is further

Court No. 20-00012 Page 12

**ORDERED** that the Department of Commerce's final determinations not to exclude 19 products from the remedy imposed by the President under Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862, as challenged in this action, are remanded to Commerce to (1) identify and correct all deficiencies in the existing administrative record, including but not limited to locating and adding all of Commerce's communications with domestic industry objectors and the International Trade Administration concerning Borusan's exclusion requests insofar as such communications are not part of the existing record, and (2) fully reconsider all of Borusan's exclusion requests; and it is further

**ORDERED** that Defendant shall file the remand results no later than 60 days from the date on which this order is entered; and it is further

**ORDERED** that Defendant shall file the corrected administrative record for the initial proceeding and the administrative record for any remand proceedings no later than 14 days after filing the remand results; and it is further

**ORDERED** that Defendant's obligation to respond to Plaintiff's complaint is moot in view of this order; and it is further

**ORDERED** that within 30 days of Defendant's filing of the remand results, the parties shall meet and confer and, if possible, file a proposed stipulated judgment disposing of this action, but if the parties are unable to agree regarding the disposition of this action,

Court No. 20-00012 Page 13

Plaintiff shall file an amended complaint within 30 days of Defendant's filing of the remand results.

Dated: June 25, 2020  /s/ *M. Miller Baker*
       New York, New York  Judge